IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM M. PANNELL,<br>      Plaintiff, | )<br>)  Civil Action No. 7:06cv00088<br>) |
| v. | )<br>)  MEMORANDUM OPINION<br>) |
| R. JAMES NICHOLSON,<br>Secretary of United States Department<br>of Veterans Affairs,<br>      Defendant. | )<br>)<br>)  By: Hon. James C. Turk<br>)  Senior United States District Judge |

**I.**

This matter is before the court on a motion for summary judgment filed by the defendant, R. James Nicholson ("Nicholson"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Nicholson requests the court to enter summary judgment on the complaint filed by pro se plaintiff, William Pannell ("Pannell"). In his complaint, Pannell alleges that he was subjected to gender discrimination and retaliation during his employment at the Veterans Canteen Service at the Veterans' Administration Medical Center, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. For the following reasons, the defendant's motion will be granted and the plaintiff's claim will be dismissed.

**II.**

Pannell is employed as a cook at the Veteran's Canteen Service ("VCS"), a food service operation at the Veteran's Administration Medical Center in Salem, Virginia. He alleges that VCS Chief, Wanda Henry ("Henry"), discriminated against him on the basis of his sex in the assignment of duties. He also alleges that the VCS retaliated against him after learning that he filed a complaint of discrimination with the EEO. Pannell cites Mary Stores ("Stores"), a female

food service worker at the VCS, as his comparitor. Pannell's allegations of discrimination and reprisal will be set forth chronologically.

Pannell alleges that he was subjected to sexual discrimination[1] with respect to the assignment of his duties on September 3, 2003, September 23, 2003, November 17-21, 2003, and November 24, 2003. On September 3, 2003, Pannell arrived late for work and was confronted by Henry about his tardiness. Stores had opened the Canteen that day and Henry told Pannell that Stores "was not going to keep opening [the VCS] by herself." Pannell then informed Henry that when she was on leave the week before, Stores not only failed to come to work, but also failed to call and request authority to be absent for the entire week. Pannell claims that Henry responded by saying, "So? You're a man." To Pannell, Henry's comment implied that he was expected to open the VCS by himself because he is a man, whereas Stores was not, because she is a woman.

On September 23, 2003, Pannell claims that Henry spoke to him and two female VCS employees about overtime pay they had reportedly earned. According to Pannell, Henry yelled at the two female employees and then turned to address Pannell, whereupon he stated, "I guess I won't get paid because I'm a man." Pannell reminded Henry of their conversation on September 3, 2003, and Henry denied that she had made a discriminating comment. Rather, she was "just trying to look out for" Stores, who was 68 years old.

On or about October 21, 2003, Pannell was placed on light duty for six weeks. Although he was restricted to lifting no more than five pounds with his left arm, he agreed to return to full

---

[1] Pannell also alleged that he was discriminated against on the basis of age in the assignment of job duties. The ADEA protects individuals over the age of forty from job discrimination. 29 U.S.C. § 631. Pannell's date of birth is April 9, 1972, making him under the age of forty. Accordingly, Pannell does not belong to the group of persons protected by the Age Discrimination in Employment Act.

2

duty within a couple of days because the VCS was short-handed. Pannell's complaint arises from the fact that while the VCS was still short-staffed, Henry allowed Stores, who was acting as Pannell's back-up cook, to go on a seven-day leave. As a result, no one remained in the Canteen to help Pannell, and he was forced to lift more than five pounds with his left arm.

On November 24, 2003, Henry directed Pannell to clean the lower shelf of Stores's oven because she was no longer able to kneel down to do so herself. In exchange, Stores was instructed to clean the upper shelf of Pannell's oven. Pannell believed this change in duties to be discriminatory and filed a formal complaint of employment discrimination on November 29, 2003,[2] alleging that he was subjected to gender discrimination in the assignment of duties on September 3, 2003, September 23, 2003, November 17-21, 2003, and November 24, 2003.

Pannell alleges that the VCS retaliated against him after learning of his complaint by unjustifiably placing him on "leave restriction" on April 7, 2004. As a result, he was required to produce medical documentation for the approval of a sick leave request, was required to request annual leave in advance, and would face disciplinary action if his pattern of absences continued. Pannell also believes that Henry discriminated against him on the basis of gender when placing him on leave restriction. He asserts that while he is called up front to meet with VCS supervisors each time he is late or sick, Stores received no such similar treatment, even though she was always late and had a worse time and attendance record during the same period. Time and attendance records from the VCS contradict Pannell's assertion however, as they show that

---

[2] Pannell also filed an informal complaint of discrimination with the EEO sometime in the fall of 2003. While the exact date of this complaint is unclear, the record reflects that Henry learned of the complaint and was interviewed by an EEO counselor sometime before October 31, 2003.

3

between January 1, 2004 and April 2, 2004, Pannell used 46.75 hours of paid leave and 69.75 hours of unpaid leave, while Stores only used 31.25 hours of paid leave and no leave without pay. Finally, Pannell asserts that while two female coworkers were allowed to take paid leave, he was required to take leave without pay when he had a positive leave balance. Pannell's time and attendance records, however, show that he was given paid leave whenever he had a positive leave balance.

Pannell claims that he has been damaged by VCS's discrimination and retaliation. Prior to the occurrence of Henry' alleged discriminatory acts, Pannell states that Henry wanted him to take a manager class. He believes that had the discriminatory incidents not taken place, he would have become Assistant Chief, and eventually, Chief. Because he never took the manager class however, he has not received these promotions. As a result, Pannell argues that Henry's discrimination has caused him to earn less wages than he could had he received the promotions.

### III.

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. See United States v. Diebold, 369 U.S. 654, 655 (1962). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

When a motion for summary judgment is made and properly supported by affidavits,

depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Instead, the non-moving party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). If the non-moving party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The standard for awarding summary judgment applies equally in discrimination cases. As in all cases, in determining whether a material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. The Fourth Circuit warns, however, that in evaluating a motion for summary judgment in employment discrimination cases, lower courts must take special care. See Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). Courts must be especially astute and practice caution when granting such a remedy because employment discrimination cases often depend on proof of motive. Id. Therefore, a genuine factual dispute exists and summary judgment is improper if this court finds, after a scrupulous review of the record, that a reasonable jury could return a verdict for Pannell. See Evans v. Technologies Applications & Service Co., 80 F.3d 954 (4th Cir. 1996).

## IV.

Pannell's allegation of gender discrimination falls within the purview of section 703 of Title VII of the Civil Rights Act of 1964, which in pertinent part makes it "an unlawful employment practice for an employer–(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Specifically, Pannell alleges discrimination with respect to the terms and conditions of his employment.

In order to demonstrate a case for disparate treatment, Pannell must either show direct or circumstantial evidence of intentional discrimination. Walker v. MCI Telecommunications Corp., 187 F.3d 633 at * 4 (4th Cir. 1999). "Discriminatory intent is an essential element of proof for such claims because disparate treatment involves distinct actions by an employer which treat certain people less favorably than others based on their race, color, national origin, religion, or sex." Warren v. Halstead Industries, Inc., 802 F.2d 746, 752 (4th Cir. 1986). The burden of persuasion as to the existence of a violation, including the element of discriminatory intent, remains on the plaintiff. Id.

Pannell fails to make a showing of discrimination under the direct method of proof because the record lacks any evidence of a stated purpose to discriminate. Henry's alleged statement, "So? You're a man," made in connection with her instruction to Pannell to arrive to work on time does not constitute direct evidence of sex discrimination. In the Fourth Circuit, "[w]hat is required . . . is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995). Assuming arguendo that Henry's alleged statement reflects a gender bias, her statement has no relation to any employment decision. "Although pejorative remarks may evidence discrimination, stray or isolated remarks unconnected to a negative employment decision will not be deemed direct evidence of discrimination." Blankenship v. Warren County Sheriff's Dept., 939 F.Supp. 451, 457 (W.D. Va. 1996).

6

Whereas Pannell has not demonstrated direct evidence of discrimination, in order to survive a motion for summary judgment, it must be by using the three-step circumstantial evidence test articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. at 802. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to dispel the presumption or inference of discriminatory conduct through evidence of non-discriminatory reasons for his actions. Id. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981) (internal citation omitted). Finally, if the defendant meets his burden of presenting a legitimate basis for his action, the plaintiff must show that the proffered justification is merely a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804-05. The plaintiff bears the burden of proving by a preponderance of the evidence that the defendant's proffered reason is not worthy of belief or that discriminatory reasons more likely motivated the defendant. Burdine, 450 U.S. at 256. This burden upon the plaintiff "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Id.

Tailored to the context and procedural posture of this case, in order to establish a prima facie case, Pannell must show that: (1) he is a member of a class protected by Title VII; (2) he was qualified for his job and performed it satisfactorily; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees outside of the protected class. See McDonnell Douglas, 411 U.S. at 802. While Pannell has established the

7

Case 7:06-cv-00088-JCT   Document 34   Filed 02/29/08   Page 7 of 12   Pageid#: 168

first two elements of the prima facie case, the record lacks any indication that he has suffered an adverse employment action.

"An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.371, 375 (4th Cir. 2004) (internal quotation omitted). Conduct short of "ultimate employment decisions"—hiring, firing, refusal to promote, or the like—can constitute adverse employment action. Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001). For discriminatory conduct to qualify as such, it must significantly and detrimentally impact the plaintiff's present employment or opportunity for promotion. See James, 368 F.3d at 375.

In this case, not one of the allegations of discrimination described in Pannell's complaint were coupled with an adverse employment action. On September 3, 2003, Henry's comment: "So? You're a man" was made in regards to an instruction to Pannell to arrive at work on time. Between November 17 and November 21, 2003, the VCS was short-staffed when Stores was allowed a leave from work, and Pannell was forced to lift weight in excess of a medical restriction. Pannell admits, however, that he agreed to return to full duty prior to November 17, 2003. Furthermore, Pannell makes no showing that Henry's decision to allow Stores to go on leave detrimentally impacted his present employment or opportunity for promotion.
Pannell also alleges that on November 24, 2003, he was discriminated against on the basis of sex when he was assigned to clean Stores's oven. "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." Von Gunten, 243 F.3d at 868. Not only was Stores assigned to clean Pannell's oven in exchange for Pannell cleaning hers, but Pannell makes no showing that the change in duties was coupled with

8

an adverse employment decision such as "a decrease in compensation, job title, level of responsibility, or opportunity for promotion."[3] James, 368 F.3d at 376.

Finally, Pannell alleges that the aforementioned episodes of discrimination prevented him from taking a manager class, which in turn prevented him from being promoted to Assistant Chief of the VCS. While a decrease in opportunity for promotion is an adverse employment action, in order to make a prima facie case of discrimination, Pannell must also show that he was treated differently than similarly situated employees outside of the protected class. There is nothing in the record to indicate that a similarly situated female employee was allowed to take the manager class and become promoted to Assistant Chief. To the contrary, in his Complaint of Employment Discrimination, Pannell mentions that a man had recently been promoted to the position of Assistant Chief. For this and the preceeding reasons, the court finds that Pannell can not make a prima facie case of discrimination under the McDonnall Douglas framework.

V.

Pannell also alleges that the VCS retaliated against him for filing a complaint of discrimination by unjustifiably placing him on "leave restriction" on April 7, 2004. Section 704(a) of Title VII prohibits an employer from taking an adverse employment action against any employee "because he has opposed any practice made an unlawful employment practice under this subchapter." 42 U.S.C. § 2000e-3(a). To prevail on his retaliation claim, Pannell must satisfy the three-step proof scheme established in McDonnell Douglas. See Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). Pannell bears the initial burden of

---

[3] Pannell also alleged that he was discriminated against on the basis of sex on September 23, 2003. The court, however, is at a loss to find any behavior or comments made by Henry on that date that could be construed as discriminatory.

9

establishing a prima facie case of retaliation. Id. If he is able to do so, the burden shifts to the defendant, who must articulate a legitimate, non-retaliatory justification for the adverse employment action. See id. If the defendant carries this burden, the burden shifts back to Pannell to demonstrate that the non-retaliatory reason provided by the defendant is mere pretext. See id.

To make a prima facie case of retaliation, Pannell must show: "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). Pannell alleges that after he filed a formal EEO complaint, a protected activity, he was placed on leave restriction by the VCS. Pannell fails, however, to make a prima facie case of retaliation because his leave restriction was not an adverse employment action. Further, he cannot demonstrate a causal link between his formal complaint and his placement on leave restriction.

An adverse employment action is one that a "reasonable employee" would find "materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2414 (2006) (internal quotation marks omitted). In this case, Henry's act of putting Pannell on leave restriction was not materially adverse. Pannell was placed on leave restriction on April 7, 2004, in response to a poor attendance record.[4] While on leave restriction, Pannell was required to produce medical documentation in

---

[4] For example, Pannell's attendance record shows that between January 4, 2004 and April 3, 2003, Pannell was absent from work without available leave time on eight occasions.

10

order to take sick leave, was required to request annual, paid leave in advance, and would face disciplinary action if his pattern of absences continued. VCS's decision to place Pannell on leave restriction was a reasonable response to Pannell's attendance record that would not dissuade a reasonable employee from filing a discrimination claim. Accordingly, it was not an adverse employment action, as contemplated by Burlington Northern. See e.g., Shannon v. Va. Dep't of Juvenile Justice, 2007 WL 1071973 (E.D. Va. 2007) (concluding that supervisor's acts of questioning employee's leave requests and monitoring employee's activities do not cross the "materially adverse" threshold); Washington v. Norton, 2007 WL 1417290 (N.D. W. Va. 2007) ("the issuance of disciplinary letters is not likely to dissuade reasonable workers from filing or supporting EEO complaints"); Gordon v. Gutierrez, 2007 WL 30324 (E.D. Va. 2007) (concluding that verbal counseling would not discourage a reasonable employee from filing an EEO complaint where the counseling was deserved, properly conducted, and resulted in no further disciplinary action against plaintiff).

Even were the court to find that Pannell's leave restriction constituted an adverse employment action, the record does not support the conclusion that there is a causal link between Pannell's EEO complaint and his being placed on leave restriction. To satisfy the third element of a prima facie case of retaliation, Pannell "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). He must show that the VCS took the adverse employment action because he engaged in a protected activity. Id. Factors relevant to the causation element "may include temporal proximity between the two events, an intervening pattern of retaliatory conduct,

11

inconsistent reasons by the employer for the adverse action, and differential treatment of other employees." Jaudon v. Elder Health, Inc., 125 F.Supp.2d 153, 165 (D. Md. 2000).

In this case, Henry's decision to place Pannell on leave restriction was clearly the result of Pannell's poor time and attendance record and was not connected to any protected activity under Title VII. Moreover, the six month time lapse between the time Henry learned of Pannell's complaint and the time Pannell was placed on leave restriction "negates any inference that a causal connection exists between the two." Dow v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); Shabica v. Engineering Sales Assocs. of the Southeast, Inc., 1999 WL 17819, at *4, 172 F.3d 864 (4th Cir.1999); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001). Accordingly, Pannell has failed to establish a prima facie case of retaliation.

## VI.

For the foregoing reasons, the court finds that the material facts in this case are not in dispute and that Pannell has neither established a prima facie case of discrimination nor a prima facie case of retaliation. Thus, the defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment will be granted.

The Clerk of Court is directed to send copies of this opinion and the accompanying order to the plaintiff and counsel of record for the defendant.

ENTER: This 29th day of February, 2008

Hon. James C. Turk
Senior United States District Judge